UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>NATHANIEL PEMBROOK,<br>DAVID BRILEY,<br>SHAEED CALHOUN,<br>ORLANDO JOHNSON,<br><br>        Defendants. | Case No. 2:14-cr-20525<br>Honorable Laurie J. Michelson<br>Magistrate Judge Mona K. Majzoub |

**OPINION AND ORDER DENYING MOTION TO SUPPRESS PHOTO LINEUP [81]**

On October 21, 2014, the grand jury returned a five-count superseding indictment charging Defendants Nathaniel Pembrook, David Briley, Shaeed Calhoun, and Orlando Johnson with offenses relating to two armed robberies of jewelry stores in Michigan in April 2014. Before the Court is Briley's motion to suppress an out-of-court identification by gas station clerk Sue Graff, who selected Briley from a photo lineup as a person she saw in her store the night before the first robbery. Briley argues that the lineup violated his constitutional rights because it was unduly suggestive and not reliable. The Court finds that the lineup was not unduly suggestive and therefore does not reach the issue of reliability. Briley's motion will be denied.

**I.  FACTUAL BACKGROUND**

The government alleges that Briley participated in the armed robbery of Tapper's Diamonds and Fine Jewelry in West Bloomfield and the attempted robbery of Medawar's Jewelry in Grand Rapids on April 22, 2014, both in Michigan. During the hearing on Briley's motion, the government called Detective Justin DeBoode, who testified regarding the investigation and photo lineup.

DeBoode testified that he responded to the initial call after the attempted armed robbery of Medawar's Jewelers. On May 28, 2014, FBI agent Brian Max told DeBoode's partner that cell phone information placed the robbery suspects in New Buffalo, Michigan the day before the robberies. Max requested that DeBoode canvas area hotels and gas stations. DeBoode visited businesses located off the freeway exit at Interstate 94 and Laporte Road, including a Comfort Inn/Super Inn hotel and a Shell gas station. DeBoode viewed security camera footage of the suspects' vehicles (a white VW Passat and a black Chrysler Town and Country) at the hotel. He also viewed security footage of three of the suspects shopping at the Shell station convenience store. The Court admitted three still-frame images from the footage into evidence at the hearing. (Exs. 1-3.) They depict two suspects entering the gas station together, and a third suspect entering the gas station alone. The store clerk working at the time was Sue Graff. (Dkt. 54-2, Report of May 28, 2014.)

On June 3, 2014, police officers spoke with Graff via telephone. (Dkt. 81-3, Report of June 3, 2014.) Graff "reviewed the surveillance video from April 21, 2014 and vaguely recalled speaking with the suspects related to this complaint." (*Id.*) DeBoode said he wasn't sure why she had watched the video, but he assumed it was because the FBI was involved and was asking about that night in the gas station. He said that to his knowledge, no one in law enforcement told her to review the video. He did not know how many times she reviewed the video. She stated that the suspects were not regular customers and that she thought they might have been from out of state. She remembered having a discussion about Michigan beer with one of the suspects.

At some point after the officers' discussion with Graff, Agent Max sent Briley's driver's license photo to DeBoode. Max had identified Briley as a suspect and selected Briley's image as a result of the ongoing investigation. He requested that DeBoode use the image to compose a

2

photographic lineup. DeBoode forwarded the image to his technician. Because it was an "outside source" photo, it had to be entered into the database and it did not have embedded data regarding the individual's date of birth, race, and other identifying features. For this reason, DeBoode speculated that his technician may have utilized the manual database features to generate a lineup of similar photographs.

On June 23, 2014, Graff viewed the photo lineup. (Dkt. 81-2, Report of June 23, 2014.) The lineup consisted of six individual photographs (Ex. 4) that were shown to Graff one by one. Graff identified Briley as "one of the suspects who she had contact with on April 21, 2014 inside the Shell Gas Station store." (Dkt. 81-2.) Briley was the fourth individual pictured in the lineup, and Graff identified him on the first pass through the lineup. Nonetheless, DeBoode showed her the last two images. DeBoode then asked Graff why she had identified Briley. In response, she "specifically described Briley as having a 'whitewashed' skin appearance which she compared to 'Michael Jackson.' She also described Briley's lips as being 'worn down.'" (*Id.*) Graff also viewed a lineup of co-defendant Shaeed Calhoun on this date. (Dkt. 54-3.)

On July 21, 2015, this Court denied a Motion to Suppress Graff's identification of co-Defendant Calhoun. (Dkt. 75.) On August 14, 2015, Briley filed his Motion to Suppress Graff's identification. (Dkt. 81.)

## II. LEGAL STANDARD

When a court considers pretrial identifications, "each case must be considered on its own facts, and . . . convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968).

In addition, "reliability is the linchpin in determining the admissibility of identification testimony." *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977); *see also Summitt v. Bordenkircher*, 608 F.2d 247 (6th Cir. 1979) ("[R]eliability is the key factor in determining the admissibility of identification evidence.").

The Sixth Circuit has prescribed a two-step analysis for evaluating motions to suppress pre-trial identifications. "First, the defendant must show that the identification procedure was unduly suggestive. If the defendant meets this burden, then the court must evaluate the reliability of the identification in the totality of the circumstances." *United States v. Sullivan*, 341 F.3d 976, 985 (6th Cir. 2005); *see also Neil v. Biggers*, 409 U.S. 188, 199 (1972). The Court need not assess reliability if the Defendant fails to meet his burden to establish that the photo array was unduly suggestive. *United States v. Washington*, 714 F.3d 962, 968 (6th Cir.) *cert. denied*, 134 S. Ct. 336, 187 L. Ed. 2d 235 (2013) ("Because the defendant failed to meet his burden to show that the photo array was unduly suggestive, an analysis of whether the identification was nonetheless reliable is unnecessary.").

### III. ANALYSIS

To determine whether a photo lineup is unduly suggestive, the Sixth Circuit "consider[s] several factors, such as 'the size of the [photographic] array, the manner of its presentation by the officers, and the details of the photographs themselves.'" *United States v. Stamper*, 91 F. App'x 445, 459 (6th Cir. 2004). This inquiry probes whether "the procedure itself steered the witness to one suspect or another, independent of the witness's honest recollection." *Cornwell v. Bradshaw*, 559 F.3d 398, 413 (6th Cir. 2009). Additionally, the Supreme Court has indicated that the suggestive nature of the array "will be increased if the police display to the witness only the picture of a single individual who generally resembles the person he saw, or if they show him the

pictures of several persons among which the photograph of a single such individual recurs or is in some way emphasized" or if "the police indicate to the witness that they have other evidence that one of the persons pictured committed the crime." *Simmons v. United States*, 390 U.S. 377, 383 (1968).

To start, the Court does find that Briley is one of the lightest individuals pictured in the lineup, and it appears a glare from the camera flashed on his skin as well. But the individuals pictured at positions one and six also have light skin tones and there is a similar glare from the flash. *See United States v. Knight*, 382 F. App'x 905, 907 (11th Cir. 2010) ("Although Knight was of a lighter complexion than four of the other individuals in the array and the background lighting in his photograph was slightly different from some of the other photographs, neither of these differences were stark enough so as to be unduly suggestive."); *see also United States v. Morgan*, No. 14-20610, 2015 U.S. Dist. LEXIS 48542 (E.D. Mich. Apr. 14, 2015) (finding no undue suggestiveness where, even though defendant's skin tone was recognizably darker than some of the other depicted individuals, it was similar to the men in the first, third and fourth photos).

In addition, all of the suspects have similarly styled facial hair and appear to be of a similar age range. *See United States v. Washington*, 714 F.3d 962, 967 (6th Cir.) *cert. denied*, 134 S. Ct. 336 (2013) (holding that a photo array was not unduly suggestive because "it reveals five African-American men in addition to the defendant, at least four of whom appear to have some sort of facial hair, and all five of whom appear to be around the same age as the defendant. Although it is true that the defendant has lighter skin than some of the depicted individuals, his skin tone is very close to the men in photos four and five, and there is not a drastic difference between the defendant's skin tone and the remaining photos."); *see also United States v. Porter*,

29 F. App'x 232, 237 (6th Cir. 2002) (holding that a photo array was not unduly suggestive where, among other factors, "In the array containing Porter's photo, all six men had facial hair and closely-cropped haircuts. None of the photos showed height marks or police placards or other suggestive features."). Nor does the appearance of Briley's lips stand in stark contrast to the other individuals in the lineup. *Hutsell v. Sayre*, 5 F.3d 996, 1005 (6th Cir. 1993) ("'[T]he police are not required to conduct a search for identical twins in age, height, weight or facial features . . . [w]hat is required is the attempt to conduct a fair lineup, taking all steps reasonable under the 'totality of the circumstances' to secure such result." (quoting *Hensley v. Carey*, 818 F.2d 646, 650 (7th Cir. 1987)).

Moreover, Graff's comments comparing Briley to Michael Jackson *after* making her identification do not render the lineup unduly suggestive. Counsel for the government represented at the hearing that Briley's driver license photo was submitted by Agent Max as a result of his investigative efforts in the case, and was not selected based solely on the Shell security footage. There is no indication that Graff's comments about Briley's facial features led law enforcement to include his photo in the lineup, especially where she made those comments *after* viewing the lineup, not before. *Cf. Raheem v. Kelly*, 257 F.3d 122, 134 (2d Cir. 2001) ("A lineup is unduly suggestive as to a given defendant if he meets the description of the perpetrator *previously* given by the witness and the other lineup participants *obviously* do not." (emphases added)).

Briley also argues that the procedure was suggestive because "[t]here can be almost no doubt that the court clerk spent more time looking at the photographic image of Mr. Briley than she did of the people with whom she spoke on April 21." (Dkt. 81 at PageID 399.) It appears that this assertion is more relevant to the reliability of the identification than to the suggestiveness of

6

the procedure. *See Grayer v. McKee*, 149 F. App'x 435, 438–39 (6th Cir. 2005) (discussing the length of time the witness spent viewing a carjacking suspect in the context of the *Biggers*, 409 U.S. at 199–200, factors)). Indeed, in *United States v. Pickett*, 278 F. App'x 465, 466 (6th Cir. 2008), the Sixth Circuit addressed the fact that a bank teller had viewed a 'wanted' poster with the face of a suspect she later identified as the robber "multiple times a day for the two months that it was posted," as part of the reliability prong of the test. *See also Holland v. Wolfenbarger*, No. 2:08-CV-13558, 2010 WL 5093100, at *10 (E.D. Mich. Dec. 8, 2010) ("Al–Shawi's and Gonzalez' exposure to the television broadcast before they selected Petitioner's picture from the photo array 'd[id] not create the type of circumstance that indicates a 'very substantial likelihood of irreparable misidentification.'" (citation omitted)).

Similarly, at the hearing, counsel for Briley argued that because Graff reviewed the security camera footage before viewing the lineup, her identification was not based on her "honest recollection" of the suspect, but rather, on the image portrayed in the security video. But DeBoode testified that neither he nor any other law enforcement agent instructed Graff to review the security camera footage before viewing the photo lineup. Thus, this is not an argument that the "procedure itself" rendered the lineup unduly suggestive, but rather that Graff herself took certain actions that made her more likely to pick a suspect resembling the one pictured on the security video. *See Wilson v. Mitchell*, 250 F.3d 388, 397 (6th Cir. 2001) ("The first factor in this due-process analysis-the suggestiveness of the identification procedure-questions whether the procedure itself steered the witness to one suspect or another, independent of the witness's honest recollection."). This is certainly relevant for purposes of cross-examination, but it does not bar the admissibility of the identification. DeBoode further testified that the hat and clothing worn by the subject on the video is different from that being worn by Briley in the photo array,

7

which further minimizes the risk that Graf selected Briley merely because she reviewed the video and not based on her independent recollection.

Because Briley has failed to meet his burden to show that the photo lineup was unduly suggestive, it is not necessary to address reliability. *Washington*, 714 F.3d at 968.

## IV. CONCLUSION

Accordingly, IT IS ORDERED that Briley's Motion to Suppress (Dkt. 81) is DENIED.

<pre>
                          s/Laurie J. Michelson
                          LAURIE J. MICHELSON
                          UNITED STATES DISTRICT JUDGE
</pre>

Dated: October 21, 2015

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on October 21, 2015.

<pre>
                          s/Jane Johnson
                          Case Manager to
                          Honorable Laurie J. Michelson
</pre>